Good afternoon, gentlemen. Please be seated. Okay, this is Case 4-130974, Boith v. City of Bloomington Fire Pension Fund at Owl, for the appellant, Thomas Duda. Duda, I think I knew that, I'm sorry. And for the appellee, Mr. Don Kravitz. Good afternoon. Please proceed. Mr. Duda. May it please the court, you already have my name, counsel, I would like to reserve five minutes for rebuttal, although I don't anticipate using the full 15 minutes in any event, but I don't know how many questions you have. You have 20, and five is automatic. Oh. We're not the second district. This is a complaint for administrative review for a You know, that's on tape. I'm sorry, counsel, go ahead. No, no, that's fine. For a firefighter who was denied a line of duty disability by the City of Bloomington Firefighters Pension Fund, and this is a complaint for administrative review. We all agree that the standard of review is a manifest way to the evidence, but we don't agree about two other things. We don't agree with what manifest way to the evidence means, and we don't agree as to whether there is any evidence to support the finding of the board that Mr. White was not a credible witness. Essentially, my argument is focused on two appellate court decisions, Lambert versus the Downers Grove Firefighters Pension Fund, and Roszak versus the Kankakee Firefighters Pension Fund, in that the procedure is very similar to what happened in the present case. In Mr. White's case, if one reviews all of the medical evidence, the three doctors that the board selected to examine him, the evidence deposition of the treating surgeon, of the examining IME doctor for workers' compensation, all of these doctors agree that Mr. White is disabled from being a firefighter, and they agree that it's due to the two accidents that he alleges occurred while he was at work. The Pension Fund indicates that these medical reports are premised on that there were two accidents, and they didn't find Mr. White credible, therefore they don't need to acknowledge the medical evidence, and they denied him a disability benefit for either of the accidents. They argue, the Pension Board argues, that manifest way to the evidence means that if there's any evidence in the record, any evidence, then affirmance is required. So there are really two things that I wanted to point out to the court. In Lambert and Roszak, both appellate courts indicate that the standard of manifest way to the evidence is a deferential standard. You can't re-weigh the evidence. You can't substitute your judgment for that of the other side, but it doesn't mean that if there's any evidence in the record to support their decision, regardless of how minuscule, then the board's decision must be affirmed. The appellate court in Lambert said, although there is case law that would seemingly support that premise, a complete review of the applicable law reveals an agency's decision will nevertheless be reversed if it is implausible. Roszak stands for the same proposition. Essentially, the board says that Mr. Wythe was incredible for three reasons. He had two injuries. One was March 23, 2007. The second was December 3, 2007 as well. And so the injury that happened on March 23, 2007, a formal injury report was filled out April 29, 2007, and the first visit to his doctor, who is a chiropractor, as a chiropractor who had seen him before, his first visit was April 12, 2007. And the board's contention is that the delay in seeing the doctor and the delay in filing a written injury report discloses a motive to deceive on the part of the plaintiff. Oddly enough, the plaintiff didn't learn his lesson on timely report because when he was hurt December 3, 2007, he didn't go to the doctor for that injury until December 12, 2007. I believe that the finding of lack of credibility is not plausible. Wasn't the board concerned that there were witnesses he could have called but did not? For example, Scott Cheeseman and Mr. Barr. Well, that's what they held. They held that that's their third prime. Their primes are that he was late reporting, that there were inconsistencies in the medical records, and he didn't call supporting witnesses. And the reality is if you look at the testimony of the witnesses, none of them could pinpoint seeing him when the March 23 episode occurred. He was alone. So the failure of Mr. Barr. I might be mistaken, but I was thinking like on the first incident in March of 2007 after he indicated that the roof came down and he was on the floor, that he then went to Scott Cheeseman and said, hey, we've got to get out of here or something of that nature, and yet he didn't corroborate his testimony by calling Mr. Cheeseman. Maybe I'm wrong about that, but that's the way I read it. You're right and wrong. You're half right, that's correct. Mr. Cheeseman went into the building with him to overhaul the first floor. All of the people who testified had been doing their extinguishing activities on the second and third floor. Mr. Cheeseman was separated from Mr. Wythe once they entered the building. The episode occurred and Mr. Wythe testified that he had told verbally that he was experiencing pain to somebody named Barr. I think his first name was Stephen Barr, B-A-R-R. And Mr. Barr was not called to testify. This is a pension hearing. I'll be honest. The need for corroborating witnesses until this case has never been a problem, but I'm not sure that Mr. Barr would have added anything because he didn't see what happened. All that happened is that Mr. Wythe told him that he was experiencing pain after doing the overhaul. But the reality is Mr. Wythe told his doctor, reported it to the city, and the city, and this is the second area of corroboration, the city handled his time off of work. His time off of work was intermittent at first, but if you look at the record, volume one, beginning at page C63, and then it's also found at the administrative record 1099, there are the attendance records for the city of Bloomington. So Steve Barr wasn't called as a witness, but in evidence were the attendance records from the city of Bloomington, which reflected for both injuries that he was being handled by the city as being off of work for a job injury, and that's documented in the record and it's in evidence. So whether the attendance records would give you more information than Mr. Barr, it's not clear to me, and that Mr. Barr not being called as a witness would be fatal to a case where all of the medical evidence supports that this gentleman was injured as a result of a line of duty incident, I simply don't think is within the manifest way to the evidence. Wasn't there also an issue that no one really could say that they saw him looking as if he had been tearing down ceiling and that after he was allegedly injured, didn't he indicate he went out and told someone that he had been injured but yet no one could really say that they saw him looking other than clean, like he hadn't been doing any removal work, the ceiling work? Okay, well he did tell Mr. Barr, okay, and Mr. Barr didn't testify. The people who testified did not, if you read their testimony, only one witness suggests that they saw him in his turnout gear and that the turnout gear appeared clean. All of the other witnesses testified that they didn't see him in turnout gear and he was clean, but the important thing is that this was a large fire. I think the report was over 20 pages and there were multiple apparatus extinguishing this fire. Mr. Wythe is a captain. He's got 29 years of seniority. He only had one more year before he should retire. During the first half of the scene, he didn't go in the building, he didn't have on turnout gear, and he was never exposed to any debris of any kind. In cross-examination, I established with all but one witness, Mr. Surin, S-I-R-O-N, he was at the fire after 1140, but all of the other witnesses had left the scene and when they left the scene, Mr. Wythe was still the incident commander. The incident commander is the one highest-ranking firefighter who oversees the scene and makes sure everybody is doing what they ought to do. So it's not conflicting that his uniform would have been clean because he wouldn't have been doing anything where he would have been exposed to debris. So the question is, is Mr. Surin's testimony fatal to his claim? When he said, I don't remember exactly when I saw him, but when I saw him, he didn't have any debris on him. Obviously the ceiling caved in on him, it knocked him over, one would have expected debris, but whether Mr. Surin had seen him at a point in time after that had occurred isn't really clear. And the reason that Mr. Wythe, to get back to the original point, didn't report it is he has 45 days to report it, and he really was hoping the pain was going to go away. And the same was true of the second episode. As I say, the witnesses who were called did not establish, I mean they were fighting a fire, and no one could establish a timeline that they saw Mr. Wythe at a place that would discredit his own testimony. And if one interviews witnesses, it's not clear one would have come up with someone who would have seen what happened, particularly in light of Mr. Wythe's testimony, that he was all by himself. The second basis of the finding of lack of credibility is what the board describes are inconsistencies in the medical reports that my client made to the doctors who treated him. And I know that it's not necessarily good form, but I did attach for the convenience of the appellate court detailed excerpts from the records of the treating chiropractor. Mr. Wythe's treatment was always managed by a Dr. Schnock, who was a chiropractor who saw him for the incident. And I did object during part of the cross-examination, but I did let the presenting attorney go into Mr. Wythe's handwritten form. And it's in my appendix, appendix 26, it's in the record in 448, where there's a handwritten form. And there's no question he was cross-examined. There's a box that says, is this work related, and he didn't check the box. And then there's a box, did this happen at work, and he put a question mark. But if you look at 448, and again, I won't read much to this court, but it says question number six, injured at, and his answer in his own handwriting is fire at 1008 Vail, Bloomington, Illinois. Mr. Wythe placed the address of where his injury occurred. It says, eight, in your own words describe the accident, quote, pulling ceiling, checking for fire extension, and slipped on wet debris and fell against the wall between the toilet and the sink. I don't know what clearer history one could provide, and this is contemporaneous with his first visit to a doctor. He didn't go to a doctor because he was hoping the back pain would go away. He wanted to serve out his last year. There is nothing inconsistent in these records. If you go backwards, beginning at page 446, for instance, Dr. Schnock has her own typewritten history, which is exactly the history that was provided by Mr. Wythe to the pension fund. And if you go back further, because there was an issue whether Mr. Wythe had told the surgeon the same history, there's a letter from Dr. Schnock at the administrative record, page 433. It's a letter dated July 17, 2007, to a doctor at McLean County Anesthesiology, and it says, thank you for seeing this patient on such short notice. Mr. Wythe was involved in a work-related injury in April of 2007 and injured his low back. So the history in the records is identical. There is no inconsistency in the medical history. And if you go all the way back to page 411, again Dr. Schnock documents the history of the December 3, 2007 episode word for word in the manner in which Mr. Wythe testified before this pension fund. And again, at the time he's seeing the doctor, he's reporting the injury to the City of Bloomington. The City of Bloomington is paying him, and in their attendance records is documenting that he is off of work due to a job injury. Yes, he didn't produce a witness, but there is corroboration in the paperwork that he provided to the City of Bloomington and is documented and unrefuted. Which raises the question I raised in my reply brief. Is there a requirement in the pension code that there be independent witness corroboration of the existence of an accident? I don't think, well I know it doesn't exist. The medical records corroborated, the records of the City of Bloomington corroborated. Oddly enough... The testimony from Fowler doesn't corroborate. Well, Mr. Fowler actually, of all the testimony, the interesting thing about his is he can't remember even the month that the conversation allegedly took place. Why does that matter? I think it's inadmissible. Pardon? I think it's inadmissible. On what basis? Because there's no foundation. A conversation, one has to establish the foundation. You mean, I recall a conversation with somebody, I can't remember the month it occurred, but it occurred probably years ago, that's not admissible? You can't remember the season? I think that, yeah, I've had conversations rejected in cases. Or the board rejected that? They did not. No, the board admitted that. Oddly enough, the board didn't rely on Mr. Fowler's testimony at all. Mr. Fowler's testimony was not the subject. And Mr. Wake... Well, it's before us on appeal, isn't it? I'm sorry? Isn't it before us? It is, yes, Your Honor. No question about it. And we should reject it because he remembers it was in a restaurant, but he can't recall the month or the season, and that's it. Because, A, he wasn't there. Why doesn't that go to the weight to be given as opposed to its admissibility? I think there has to be some evidence, foundation evidence. You don't have to give the date. But I think that for a conversation to be admissible, there has to be some testimony that focuses it on a specific time period, at least a season. Was he asked? I actually cited a case. I didn't spend anything in my reply brief. Was he asked to specify as best he could when this conversation occurred? I did. I'd cross-examine it. And he said, I can't remember? That's what he said. That's enough to bar the conversation from admissibility. In my opinion, that is not sufficient foundation for a conversation. But I would point out to the court that that conversation was not the basis of the pension board's opinion. How do you know? Because they don't mention it. It's not mentioned in their decision in the least. Well, it's before them. Isn't that a fact that they can consider, like us? If the court believes that it was properly admitted, it would be a modicum of evidence for the court to weigh in deciding whether it's against the manifest weight of the evidence. But whether Mr. Fowler's testimony at a restaurant at an unspecified date and time is considered in light of all of the medical evidence, in light of the attendance records, and in light of the history. And in the Roszak case, the appellate court held that the history given to a treating physician is admissible for the purpose of corroboration. So if the court considers Mr. Fowler's testimony in the face of all of this other evidence, I still think it's against the manifest weight of the evidence. Based upon that, I believe that the decision of the board ought to be reversed and Mr. Wythe ought to be granted a line of duty disability. Okay, Mr. Doody. We'll have rebuttal. Mr. Craven. Good afternoon. May it please the court, counsel. The board found the testimony of Mr. Wythe lacked credibility for many reasons, starting with the doctor's brief forms. The question is, is this a work-related injury? One place it's left blank. One place it's met with a question mark. That's not a tough question, especially for a firefighter who's been around for 25-plus years. Some places there's no claim of a work-related injury, and there are times in the reports, in the medical records, where at some points he mentions the March incident, sometimes he mentions the December incident, sometimes he mentions both incidents. And we have to remember that these medical records, they're based on a sole source. They're based only on Mr. Wythe. There is no independent source of anything that's in those medical records, aside from what Mr. Wythe has told his doctors. So we start there. That's compounded by either the lack of or delayed reports of injury, delayed visits to a chiropractor. He had a longstanding relationship with his chiropractor. He claims a back injury, but he didn't see his longstanding chiropractor, who managed his health care, as said earlier. He didn't go see that chiropractor for 20 days. The deputy chief siren indicates that with respect to this big fire, there are no injury reports, job injury reports, in the file. That is compounded or coupled with the lack of corroborative evidence. Is there an obligation to bring corroborative evidence in a firefighter pension board hearing? No, the statute, the pension code, doesn't require it. But in the face of testimony of five or so other firefighters who were at this scene, all of whom say that they saw Mr. Wythe there, none of whom say they ever saw him dirty. Now, was he outside managing the fire at the beginning? Yes. But over the course of this event, nobody ever saw him looking like he'd been pulling down a ceiling and had wet ceiling fall on him and slipped and fell. Mr. Barr wasn't called to testify that Wythe had reported his injury to him. Mr. Cheesman wasn't called to testify, to rebut this other evidence, even to the extent that, yeah, Wythe and I went into the building together. There's nothing. Should we draw a negative inference because these people didn't testify after all? Why did the city call these folks? It's the applicant's burden of proof. I don't think we need to necessarily call it a negative inference. So a pension board proceeding of this sort is adversarial as a typical negligence action? No. I wouldn't think so, but it sounds like, you know, then here's my concern. There are only a handful of people who have anything to say about this case, and it seems to me that if the petitioner isn't calling them that I'm a board member, I'd turn to the city and say, hey, how about you? Let's hear what these folks have to say. And the board, through their, I guess we adopted the phrase presenting attorney, whatever a presenting attorney is, did call. I mean, some of these witnesses. But not all of them.  The board did not call Cheesman. Could the board have called Cheesman? Sure. But the board, the presenting attorney, called the witnesses that he was aware of who frankly presented evidence that they didn't think that Woyth was ever in this fire. Well, maybe another minor troubling thing about this is in a sense, what's his name, Woyth, is that how it's pronounced?  Woyth? It is Woyth. Okay. Woyth is a Catholic with the Bloomington Fire Department. He's retired after over 20 years. It's a bit troubling to have a determination made on the basis of the evidence presented that is not credible. It would be nicer if we had everyone testify as opposed to gaps before a determination like that is made. In a perfect world, yes. I suppose that's an entirely appropriate assessment. But the burden remains in these cases on the applicant. And I would posit that the burden was then on the applicant to bring Mr. Cheesman in to say, yeah, I saw him go into the fire. We dressed up and went in. Now, was I in the room when? Nobody's saying that he was in the room when this happened, but he could have at least presented evidence to corroborate his statement that he went into the fire. So it's your position that the medical evidence is based on his word, and he's not credible as to whether or not he was involved in an accident at work? Right. He may have backpacked. But to establish the necessary, to meet the necessary burden of proof to establish a duty disability, we don't think that he, the board clearly felt that he did not do that. His testimony wasn't credible. His testimony has gaps. His testimony has, the information presented to the doctors has gaps. What about this aspect? The whole question of, I guess the issue was, did this arise in the context, was it caused by employment-related activities? What if someone has or has developed over the course of his employment a back problem from whatever, just growing older and out on the golf course he strained his back, let's assume. To what extent is it a employment-related activity if, at this point, a preexisting back problem is exacerbated by something at work, not caused? Does that cover it? The language of the statute is caused by an act of duty or the cumulative effects of an act of duty. So if you, if a guy like White hurt himself on the golf course and then added to the strain while on employment, that might not be enough? If it wouldn't otherwise have occurred but for the golf course injury? If there is evidence of a preexisting condition that is exacerbated by an act, by an injury in an act of duty or cumulative effects of an act of duty, that's pensionable. Okay. By the way, thank you, Mr. Kramer. You rather better stated the question I was stumbling about, the preexisting condition exacerbated. So thank you for that. Would you like to hear my Justice Green story? I've heard it. And there's a lot of wisdom to that, too. And on the other incident involving putting the, there were witnesses. There were two guys who were with, he testified. There were two other firefighters with him then. It's three minutes of testimony. Were you there? Did this happen? And we're done. There's a lot of discussion in these briefs about the standard of review. And speaking only for myself, been at this a long time, but I've never quite understood the nuances between abuse of discretion manifest with the evidence. It always struck me as to be able to reverse prior factors in this case, we have to be able to conclude that the decision wasn't reasonable. No reasonable person or board could have reached the decision reached in this case. Is that the standard? Well, counsel, if I want to suggest that we have to give the opinion that the opposite conclusion is clearly evident, does that sound right? I've never understood the difference. Justice Holder-Wright is correct, but I'm not sure. Well, I was going to answer your question with a question. As soon as somebody defines reasonable, I'll be able to answer that question. And I think there's some language in the cases that Mr. Duda cited that, you know, it's not enough that there's a little bit of evidence in the record to support the board if the court determines that the board's determination would be a manifest injustice. There's another way of putting that. But I think in this case, the decision of the board is focused on gaps in the testimony, gaps in the records, the failure to answer the simple questions, and, frankly, the lack of any other evidence to support that these events ever happened. I suppose, again, the better question would have been, is the standard that we should reverse only if the opposite conclusion is clearly evident, any different than the standard of it's not no reasonable person could have reached that decision? I think they're the same. I think you get to the same point. Well, as I say, maybe someone better than I could have figured it out. I'm still struggling with it. I'm sorry. I interrupted your argument. Some of it would appear to be conclusion driven. But I think they're essentially the same. No other questions? I will rest. I see none. Thank you. Is there any rebuttal? I have no further rebuttal unless the court has additional questions for me. I think the court understands the issue. I see no further questions. So, gentlemen, thank you. The case is submitted and the court stands in recess.